PERRY, et al. *v.*
SOUTHERN FARM BUREAU INSURANCE COMPANY

No. 43293          January 18, 1965          170 So. 2d 628

*Donald Franks,* Booneville, for appellants.

*Mitchell, McNutt & Bush,* Tupelo, for appellee.

Lee, C. J.

The appeal, in the present instance, comes to this Court on an agreement and stipulation by the parties and their counsel as to the only issue for decision. They have agreed that (1) "the facts of this case are as found by the Chancellor in his opinion"; that (2) the cause may be heard without the transcript of the testimony presented at the hearing; and that (3) the only question is whether Mrs. Mary J. Edge is without relief under coverage A of the insurance policy in question by exclusion B therein.

This exclusion is as follows: "This policy does not apply under coverage A to bodily injury or to death of the insured or any member of the family of the insured residing in the same household."

The opinion of the trial court shows the facts substantially as follows: On December 11, 1956, Mrs. Mary J. Edge was injured in an automobile accident. At the time she was a guest in a 1956 Pontiac automobile, owned and operated by her son-in-law Lewis E. Perry. A collision occurred between that vehicle and a car operated by Dean Caldwell, at an intersection in the City of Booneville. Mrs. Edge sustained severe permanent injuries.

Thereafter Mrs. Edge sued both Perry and Caldwell jointly in the Circuit Court to recover damages for her injuries. The defendant insurance company carried liability coverage on both vehicles. It defended Caldwell but refused to defend Perry, who did not employ private counsel. There was a judgment against both defendants in the sum of $30,000.00. The insurance company paid $5,000.00 on the judgment as its liability under its contract with Caldwell; but it denied any liability for Perry (a) under the terms of the policy and (b) because of the relationship and actions of Mrs. Edge and Mr. and Mrs. Perry.

As to whether Mrs. Edge was a member of the Perry family and residing in the same household, the chancellor's opinion found the following facts: ''The facts in this regard are not in dispute. They show that after Mr. and Mrs. Perry married they lived in Mrs. Edge's home with her in Alcorn County for about 19 years. They lived as one family with Mr. Perry providing the food. In October 1956, Mr. and Mrs. Perry moved to a home that they had purchased in Booneville. At that time Mrs. Edge moved her bed and personal things and Mrs. Edge carried on about the same routine as she had done when the Perrys resided in her home. This situation existed at the time of the accident.''

So, applying those facts to the governing principles of law, the court concluded, in a well reasoned opinion, that, while no merit was shown by the insurance company on its proposition of refusal by Perry to co-operate, the exclusion B on the A coverage effectually denied Mrs. Edge from recovering against the insurance company, and therefore dismissed the bill of complaint.

Consequently, the sole question, as stated at the outset in proposition (3) of the stipulation may now be viewed in connection with the factual situation.

In the case of Fleming v. Travelers Ins. Co., 206 Miss. 286, 39 So. 2d 885 (1949), the question was whether the husband, operating the car at the time of the infliction of the injury, was a member of insured's household. Mrs. Stewart was the insured. Stewart, the husband, was the operator. This couple, although not divorced, were living apart in different localities, had so lived for 5 or 6 years, and maintained separate households. The trial court held that the insurance company was not liable to Verla Fleming, the injured party, for Stewart's negligence. But this Court, after detailing the facts, was of the opinion that Stewart, the tort feasor, was not a member of the insured's household,

and that the insurance company was liable for his act. The opinion at pages 293-4 said:

"*At the outset, we must discard popular definitions of the term whose liberal generalities are rarely* subjected to technical scrutiny. Nor are those cases controlling which apply a definition which recognizes a mere formal status as sufficient to protect an exemptionist. In seeking to expand the meaning to include many diverse situations, *the courts, have, without perfect consistency, solved their dilemmas by such test as the fact or obligation of continual support, housing under a single roof, actual dwelling together, absence animo revertendi; constructive presence or actual absence. Divergent results have followed* the application of these criteria operating *in some cases* to establish the status, and in others to deny it. It is not our purpose to bring to view the many decisions which illustrate, not only the application of these tests, but also the common denominator is the evident purpose of the statute or contract involved. 'Household' cannot be satisfactorily defined as an abstract term. Definition by lexicon supplies elements which are seized upon by opposing interests, and isolated from other factors furnish material relevant to contradictory conclusions.

"We are dealing with a contract of insurance. *We must inquire what the parties thereto meant.* Practical considerations must be given play, interpreted in the light of the purpose of the policy provision. *This provision has been repeatedly held to reveal an obvious purpose to avoid a multiple coverage of several vehicles owned* by members of the same family, who, by their close intimacy, may be expected to use the cars of each other without hindrance and with or without permission, thus increasing the liability of the insurer who has a right to expect each owner to contract for his own coverage."

It can likewise be seen that there is no valid reason why insurance companies should not have the right, by contract, to avoid coverage for those in the family circle, who, on account of their close intimacy, may be expected to be riding at frequent intervals in the insured car.

In the case of Ellis v. Southern Farm Bureau Casualty Ins. Co., 233 Miss. 840, 103 So. 2d 357 (1958), at page 845, the endorsement in question provided that "the policy to which this endorsement is attached shall not be in force and effect while any motor vehicle which would be covered by this policy is being operated by any driver other than the named insured or member of his family." At page 847 thereof, the opinion said: "Since there is nothing ambiguous in the restrictive endorsement, it should be construed according to the usual rules of law applicable to contracts."

In the case of Goens v. Arinder, 248 Miss. 806, 161 So. 2d 509 (1964), a fair statement of the court's holding is digested in the syllabus, to-wit: "Daughter, temporarily visiting in father's home, was not 'resident' of father's 'household' within father's automobile liability policy excluding coverage to a non-owned automobile registered in name of relative residing in insured's household and furnished for regular use to relative residing in insured's household, where daughter and her husband and their child were temporarily visiting or sojourning in father's home awaiting completion of daughter's new house and birth of baby." The opinion pointed out that, while Arinder, the father of Sylvia Arinder, the driver of the uninsured Stogner car at the time, was also the father-in-law of Stogner, it detailed the facts to show that Stogner and his wife were not residents of the Arinder household, but that they were temporarily visiting and sojourning there at the time. The Court therefore concluded that they were not residents of the Arinder household within the meaning of the exclusion clause.

■■ ■ But the statement of facts in the instant case, as set out above, established that Mrs. Edge for many years had been, and, at the time of the accident, was, living in a close family relationship with Perry and his wife, her son-in-law and daughter. In the Perry home, she was carrying out the same routine as when this couple lived in her home. Her place in the household was the same as that which flows out of such relationship. To all intents and purposes, she was a member of the Perry family and was residing in the same household. In the Fleming case, *supra,* a similar purpose of exclusion of liability existed but the facts did not establish such existence.

From the above authorities, three conclusions are inescapable to-wit: (A) The word "family" was not ambiguous in this instance; (B) the court will not be bound by mere abstract definitions; and (C) the intent of the contract and the attendant circumstances must be considered in arriving at reasonable conclusions in such cases.

The attorneys on both sides have presented able arguments. The cases, here cited, were commented upon by both of them. Other authorities together with cases from different jurisdictions, have been brought to the attention of the Court. But, the polestar, from which the Court has taken its reckoning, is found in the general principles which have permeated the jurisdiction of this state, and which appear in the cases which have been cited. Hence, the Court feels no urge to deal in semantics or metaphysical dissertation.

The decree of the trial court is affirmed.

Affirmed.

*Ethridge, Rodgers, Brady, and Patterson, JJ.,* concur.